IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 11, 2001

### LEON GOINS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C98-204      Lee Moore, Judge**

---

**No. W2000-02608-CCA-R3-PC  - Filed August 3, 2001**

---

The petitioner appeals the denial of post-conviction relief on his conviction for the sale of .5 grams of cocaine, a Schedule II controlled substance.  In his *pro se* petition for post-conviction relief, the petitioner alleged that his trial counsel was ineffective for failing to thoroughly investigate and keep him informed of vital information regarding his case.  After the appointment of post-conviction counsel and a hearing on the petition, the court denied the petition for post-conviction relief.  The petitioner filed a timely appeal to this court, raising the sole issue of whether the post-conviction court erred in finding that he had effective assistance of trial counsel.  Based upon a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Thomas E. Weakley, Dyersburg, Tennessee, for the appellant, Leon Goins.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On August 10, 1998, the petitioner, Leon Goins, was indicted by the Dyer County Grand Jury on two counts of the sale of .5 grams of cocaine.  He was subsequently convicted on one count of the sale of .5 grams of cocaine, a Class B felony, and sentenced as a Range II, multiple offender to fifteen years in the Department of Correction, with the sentence to be served consecutively to a seven-year sentence on a prior burglary conviction.  The petitioner's conviction and sentence were affirmed on direct appeal to this court.  See State v. Leon Goins, No. W1999-00157-CCA-R3-CD, 2000 WL 527763, at *1 (Tenn. Crim. App. May 2, 2000).

On May 22, 2000, the petitioner filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of counsel. The petitioner alleged that trial counsel had been ineffective for failing to assist him in filing motions and in not obtaining copies of motions filed by him. He further alleged that trial counsel had been aware several days prior to trial that the videotape copy prepared by the State of the drug transaction had been partially taped over, and that a full, more incriminating version existed but failed to copy the full version to show to him, or to inform him that the tape the petitioner had viewed was incomplete. Post-conviction counsel was appointed and, on August 8, 2000, filed a notice that no amendment to the petition would be filed.

An evidentiary hearing was held on August 24, 2000. The petitioner's trial counsel testified that he was employed by the Public Defender's Office, and that he had been appointed to represent the petitioner in August 1998. He said that he had discussed the case with the petitioner on "numerous occasions," and that he had filed discovery motions on the petitioner's behalf. The petitioner, he said, "should have been aware" that he was filing motions for him. As he recalled, however, the petitioner had filed motions on his own, consisting of requests for a speedy trial and that he receive copies of all discovery materials.

Trial counsel testified that he had requested from the State a copy of the videotape of the petitioner's alleged drug transaction. Approximately three or four weeks prior to trial, he had received a copy that had been prepared by the law enforcement investigator involved in the case. He had viewed the tape "numerous times" and had shown it to the petitioner, taking a videocassette recorder to the jail where the petitioner was housed. At that time, he had not known that a portion of the videotape had been recorded over.[1] Trial counsel said that the petitioner had decided to go forward to trial before viewing the tape, and that there was "no change" after assessing the tape. The petitioner had never indicated any desire other than to go to trial. The State had offered him a plea bargain of ten years on each count, to be served concurrently, but he had refused.

Trial counsel testified that he had not discovered that the videotape had been partially taped over until the morning of the trial. When viewing the tape, he had noticed that it contained a section at the beginning in which the scene being filmed had "click[ed] over to another viewing, another thing." He had come in at about 5 a.m. on the morning of the petitioner's trial and reviewed the tape three times, paying careful attention to that scene. After studying the tape, he had come to the conclusion that a portion of it had been taped over, and "started to try to think about things that [he] could do in regards to that[.]"

Trial counsel said that he had requested that the trial court suppress the tape, but his request had been denied. He could not recall whether he had asked the trial court for a continuance in order to obtain and review a proper copy of the tape. He indicated, however, that he had thought that the petitioner stood a better chance of avoiding a conviction without the tape, and had considered it to

---

[1] The police officer apparently inadvertently taped the second drug transaction over a portion of the first drug transaction. See Goins, 2000 W L 527763, at *1.

be a better trial tactic to ask that the tape be suppressed, rather than request a continuance, in the hopes that they could proceed to trial without the videotape evidence.

Trial counsel thought that he had mentioned to the petitioner on the morning of the trial that he had discovered a problem with the videotape and that he was going to try to have it suppressed. He could not remember, however, if he had talked about it in detail. He had not told the petitioner that there was another version of the tape because he had not known, at that time, that another version existed. He subsequently learned at trial that there was a copy of the full drug transaction. The State's request to have that copy admitted into evidence had been granted, so that ultimately both tapes were admitted at trial. Trial counsel acknowledged that the full tape was much more damaging to the petitioner than the copy that the petitioner had viewed, and that the petitioner's chances of avoiding a conviction would have been greater if only the "bad" tape had been shown. Before he had known of the existence of the full tape, he had urged the petitioner to consider the plea bargain that had been offered by the State prior to trial. Had he known of the full tape, he said, he would have "tried to have been much more forceful" in urging the petitioner to accept the State's offer.

The petitioner complained that trial counsel had not come to talk to him in the jail "as quickly and as often" as he had wanted. He said that trial counsel had not informed him about the motions he was filing on the petitioner's behalf, and had not talked to him about the motions that the petitioner was filing. He had not known that trial counsel had filed a discovery motion for him. He also had not known that he was not supposed to file motions on his own until the judge called him and trial counsel to court and told him that he could not file motions without his lawyer present to help him. Trial counsel, he said, had told him to send any future motions directly to his office.

The petitioner testified that trial counsel's secretary had brought a copy of the "bad" tape to him in jail "some time prior" to the trial, and that he had viewed it twice. The tape was short, and it was difficult to see who was on it. Citing trial counsel's statements at the suppression hearing, the petitioner claimed that trial counsel had known that there was a problem with the tape several days before trial, but had not told him about the problem.[2] The petitioner said that he had not learned of the existence of the full version of the tape until trial. He had first seen the full tape on the morning of trial, just before the trial began. The full tape was very incriminating, and he would have wanted to plead guilty if he had seen that version before trial. If he could have accepted the State's plea bargain offer at that point, he would have, but he had understood that the offer had been good for only ten days and his time for accepting it had expired.

On cross-examination, the petitioner testified that he had wanted the case postponed so that he and his lawyer could at least discuss the full tape and determine "exactly what was going on on this thing." He had not known at that time if he wanted to enter a guilty plea. However, he had

---

[2]Trial counsel apparently stated in the suppression hearing that he had been aware that there was some problem with the tape several days prior to trial. See Goins, 2000 WL 527763, at *5.

thought it might be a good idea, given the incriminating nature of the tape. He thought that trial counsel should have shown him the full tape several days before trial, when counsel first learned of the problem, so that he could have been fully informed and the trial would have been fair. However, he could not explain how counsel's failure to show him the full version of the tape had prejudiced the outcome of his case:

> Q. Okay. I guess, again, my question, Mr. Goins, is, how did that adversely affect you, the fact that he knew there was another tape there, and you didn't know it until the day of trial? What did you want done that wasn't done?
>
> A. I wanted a fair trial, and I don't feel like I got that. I feel like I was ambushed, because I didn't know about the tape.
>
> Q. You don't think the trial was fair because the judge let the tape in?
>
> A. Yes.

At the conclusion of the hearing, the post-conviction court found that the petitioner had failed to meet his burden of showing ineffective assistance of counsel and denied the petition for post-conviction relief.

## ANALYSIS

The petitioner contends that the evidence showed that trial counsel was ineffective for failing to communicate and keep him informed of the progress of his case, and for failing to obtain a corrected copy of the videotape to show him before trial. He argues that if trial counsel had been providing zealous representation, he would have recognized the problem with the tape prior to the day of trial and obtained a corrected version to show to the petitioner while the plea bargain offer was still on the table. The petitioner claims that if he had known of the existence of the full tape, he would have accepted the State's plea offer of ten years.

The State contends that the petitioner failed to show that trial counsel was deficient in his representation, or that any alleged deficiency in representation prejudiced the outcome of his case. In particular, the State argues that even if the petitioner's allegations that trial counsel knew of the problem with the tape several days prior to trial were true, the petitioner failed to present any evidence to show that the plea bargain offer was still open at that time, and, thus, that he was prejudiced by counsel's failure to obtain a corrected version of the tape.

# I. Standard of Review

The petitioner has the burden of proving his allegations of ineffective assistance of counsel by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The court's conclusions of law, however, are reviewed purely *de novo*. Id. The issue of ineffective assistance of counsel presents mixed questions of law and fact and is therefore reviewed *de novo*, with a presumption of correctness given to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

To succeed on a claim of ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding, in that the result of his trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When analyzing a petitioner's allegations of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Because both prongs of the Strickland test must be satisfied before a petitioner can succeed on a claim of ineffective assistance of counsel, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## II.  Motions

The petitioner's first allegations of ineffective assistance concern trial counsel's failure to "meet with him as requested" regarding the motions he was filing in the case.  At the hearing, the petitioner initially testified that trial counsel would not meet with him to discuss and assist in the motions the petitioner was filing, and that trial counsel failed to tell him that he had filed a discovery motion on his behalf.  He admitted, however, that trial counsel had met with him at the jail on a number of occasions, and indicated that, on at least one occasion, they had discussed the motions:

> Q.     Okay.  But he didn't talk to you in particular about these motions; is that correct?
>
> A.     No.  I brought 'em up, and I asked him had he did anything on the motions that I'd filed, 'cause I wanted to know more about the police officer and other things, . . . and he said he was gonna take care of it and he'll get back with me.  But everything that I filed, he basically never did anything.

The petitioner also testified that trial counsel had told him, after their meeting with the judge, to send any future motions that he wanted to file directly to counsel's office.

Trial counsel testified that he had  met with the petitioner numerous times to discuss the case and that he had filed discovery motions, including a request for the videotape of the drug transaction from the State.  No evidence was presented to show that trial counsel failed to request any relevant discovery material from the State, or that the petitioner was prejudiced by counsel's alleged failure to discuss with him the motions that the petitioner was filing.

The post-conviction court found that trial counsel had filed all necessary discovery motions in the case.  The court found that counsel had not been deficient with regard to the motions, and that the petitioner had failed to demonstrate how he had been prejudiced by counsel's alleged failures.  The record supports these findings.  The petitioner is not entitled to post-conviction relief on this claim.

## III.  Videotape Evidence

The petitioner also alleges that trial counsel provided ineffective assistance by his failure to "reasonably and competently scrutinize the copy of the video tape" that had been given to him by the State, contending that counsel should have recognized the problem with the tape earlier, and requested a corrected copy to show to the petitioner before trial.  Asserting that he would have accepted the State's plea offer if he had known of the full version of the tape, he argues that counsel's failure to obtain the corrected copy "had the very prejudicial result of not allowing [him] to take the plea offer of 10 years[.]"  The post-conviction court found, however, that the petitioner had failed to show that trial counsel's acts or omissions with regard to the videotape evidence

constituted a deficiency in performance, or that any alleged deficiency in performance had resulted in prejudice to the petitioner. Again, the evidence supports these findings.

The petitioner contends that if trial counsel had competently scrutinized the videotape copy he received from the State, he would have recognized the tape-over problem earlier. However, the petitioner himself viewed the tape twice, apparently without noting anything amiss. Trial counsel testified that he had watched the videotape on "numerous occasions," and indicated that it had been very difficult to detect that a portion of it had been taped over. No evidence was offered to show that trial counsel, in failing to recognize the problem earlier, "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner, therefore, failed to meet his burden of showing a deficiency in counsel's performance.

Furthermore, the petitioner failed to show that he was prejudiced as a result of counsel's failure to recognize the videotape problem and obtain a corrected copy of the tape prior to trial. The petitioner's claims of prejudice are based on his assertion that he would have accepted the State's offer of ten years, to be served concurrently to the seven-year sentence on his prior burglary conviction, had he viewed the videotape of the full transaction before trial. He failed to offer any proof, however, to show that the State's offer had still been open when counsel allegedly first learned of the problem with the videotape. The State indicated in closing argument that the plea offer had been made in August, several months before the trial began. The petitioner testified that his understanding, "according to the papers that [he had] read," was that the plea offer had been good for only ten days. Trial counsel testified that he had received his copy of the videotape from the State approximately three or four weeks before trial. If such was the case, the State's plea offer had already expired not only by the time that counsel allegedly first learned of the problems with the tape, but also by the time that counsel received his copy from the State. Therefore, even if counsel was deficient for failing to obtain a corrected version of the videotape prior to trial, no prejudice to the petitioner could have occurred. The petitioner is not entitled to post-conviction relief on this claim.

## CONCLUSION

We conclude that the record does not preponderate against the post-conviction court's finding that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE